UNITED STATES v. SEVENTY-FIVE BARRELS OF VINEGAR (SPIEL-·
MAN BROS. CO., Claimant).

(District Court, N. D. Iowa, E. D.　December 11, 1911.)

No. 12.

1. FOOD (§ 16*)—ADULTERATED FOOD—FEDERAL PROCEEDINGS AGAINST—NO-
TICE TO CLAIMANT—NECESSITY.

　　The giving of notice under Food and Drugs Act June 30, 1906, c. 3915,
§ 4, 34 Stat. 769 (U. S. Comp. St. Supp. 1909, p. 1189), to claimant, of
food found by the Department of Agriculture to be adulterated, is not a
prerequisite to the duty of a district attorney, under section 5, to pro-
ceed to enforce the penalties of the act.

　　[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

2. CONSTITUTIONAL LAW (§ 306*)—DUE PROCESS—FOOD AND DRUGS ACT.

　　The notice required by Food and Drugs Act June 30, 1906, c. 3915, § 4,
34 Stat. 769 (U. S. Comp. St. Supp. 1909, p. 1189), to be given at the sei-
zure of adulterated food and proceedings for its condemnation, affords
ample opportunity to the owner to appear and defend; and if upon a
final hearing the food is condemned, he is not deprived of any property
without due process of law.

　　[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 928;
Dec. Dig. § 306.*

　　What constitutes a violation of pure food regulations, see note to
Brina v. United States, 105 C. C. A. 559.]

Libel by the United States of America against Seventy-Five Barrels
of Vinegar, claimed by the Spielman Bros. Company.　On exceptions
to claimant's answer.　Exceptions allowed.

F. F. Faville, U. S. Atty., and J. A. Rogers, Asst. U. S. Atty.
Thomas E. Lannen and Hurd, Lenehan & Kiesel, for claimant.

REED, District Judge.　In this case the United States have filed
a libel of information against 75 barrels of vinegar, which it is al-
leged were shipped from the state of Illinois into the state of Iowa,
and held in the latter named state, within the jurisdiction of this court,
by the John T. Hancock Company at Dubuque, Iowa, and were being
offered for sale for food consumption by that company in violation of
the food and drugs act of Congress approved June 30, 1906.　34 Stat.
768 (U. S. Comp. St. Supp. 1909, p. 1187).

Spielman Bros. Company, a corporation of Illinois, has intervened
in said proceedings, and claims to be the owner of said vinegar, admits
that it was shipped from Illinois to Dubuque, in the state of Iowa,
and was being held at Dubuque by said John T. Hancock Company,
a corporation, but denies that the same was shipped, or is being held
or offered for sale, in violation of said act of Congress.　It further
alleges that a sample of said vinegar was obtained by the Bureau of
Chemistry of the Department of Agriculture, and was analyzed by
said bureau, or under its directions, and found, in the opinion of said
bureau, or the analyst of said sample, to be adulterated and mis-
branded, within the meaning of said act of Congress, and a report
and certificate to that effect made by the Secretary of Agriculture and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forwarded by him to the United States Attorney for this district, who, upon such report and certificate alone, instituted this suit under section 10 of said act, as directed by section 5 thereof, for the condemnation and forfeiture of said vinegar. It is then alleged, in article 6 of its substituted answer or claim, as a defense to the proceedings, that the Secretary of Agriculture failed to give notice to the person from whom the sample of said vinegar was procured, or to this claimant, or to any other person, that such sample of vinegar had been analyzed by the Bureau of Chemistry, or under its direction, and found to be adulterated or misbranded, and an opportunity given to them to be heard upon the question of adulteration or misbranding of said vinegar, before this proceeding was commenced, and prays that the suit be dismissed and said property restored to the claimant.

To so much of the allegations of the claimant corporation as allege the failure of the Secretary of Agriculture to give the notice required by section 4 of said act, and afford to it, or to the person from whom said sample was obtained, an opportunity to be heard before the Department of Agriculture prior to the commencement of this proceeding, the government excepts, for the reason that the same constitutes no defense to this proceeding.

[1] It is contended in behalf of the claimant company that, when a proceeding of this character is instituted by the United States Attorney, solely upon the report and certificate of the Secretary of Agriculture to him of a violation of said act, and not upon his own initiative, or upon information furnished to him by the local authorities, such proceedings cannot be sustained, unless the Secretary of Agriculture has, prior to the commencement of such proceedings, in fact given the notice and afforded to the person from whom the sample was obtained an opportunity to be heard, as provided in section 4 of said act; and the case of United States v. Twenty Cases of Grape Juice, Flickinger & Co., Claimants, 189 Fed. 331, decided May 8, 1911, by the Circuit Court of Appeals of the Second Circuit, is cited in support of such contention. That case supports the contention of the claimant, upon the ground, as it would seem, that it is the practice of the government to make an investigation through the proper executive department of alleged violations of the laws of the United States, before commencing criminal proceedings against the alleged offender, or proceedings for the forfeiture of property shipped, or offered for sale in violation of law. Admitting that such is the practice of the government, it cannot be that it is the right of an alleged offender to have such investigation made before he can be indicted for an alleged offense, or proceedings commenced against him, or the property which has been shipped or offered for sale in violation of law, for its condemnation and forfeiture, or that he can plead the failure to make such investigation as a defense to an indictment, or other proceedings for the condemnation of the property so illegally used.

Section 4 of the food and drugs act reads in this way:

"That the examinations of specimens of foods and drugs shall be made in the Bureau of Chemistry of the Department of Agriculture, or under the direction and supervision of such bureau, for the purpose of determining from

such examinations whether such articles are adulterated or misbranded within the meaning of this act; and if it shall appear from any such examination that any of such specimens is adulterated or misbranded within the meaning of this act, the Secretary of Agriculture shall cause notice thereof to be given to the party from whom such sample was obtained. Any party so notified shall be given an opportunity to be heard under such rules and regulations as may be prescribed as aforesaid, and if it appears that any of the provisions of this act have been violated by such party, then the Secretary of Agriculture shall at once certify the facts to the proper United States District Attorney, with a copy of the results of the analysis or the examination of such article duly authenticated by the analyst or officer making such examination, under the authority of such officer. After judgment of the court, notice shall be given by publication in such manner as may be prescribed by the rules and regulations aforesaid."

Section 5 is as follows:

"That it shall be the duty of each District Attorney to whom the Secretary of Agriculture shall report any violation of this act, or to whom any health or food or drug officer or agent of any state, territory, or the District of Columbia shall present satisfactory evidence of any such violation, to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States, without delay, for the enforcement of the penalties as in such case herein provided."

This proceeding is under section 10 of the act, which need not be set out. In the case above cited it is conceded that the failure of the Secretary of Agriculture to give the notice and afford the opportunity to be heard, as required by section 4 of the act, does not limit the authority of the United States Attorney to commence proceedings upon his own initiative and prosecute the same to final determination; but it is held that said section imposes upon the Secretary of Agriculture the duty of making an investigation of the facts before he may rightly make a report and certificate to the United States Attorney for the proper district of a violation of the act, and before proceedings instituted without such notice and opportunity to be heard can be sustained. It seems to me that section 5 of the act imposes upon the United States Attorney of the proper district the duty of instituting the appropriate proceedings whenever he is informed by the local authorities, or by the report and certificate of the Secretary of Agriculture, that the law has been violated, to commence without delay the appropriate proceedings for the alleged violation of this act. And whenever such information or report is made to him he has no discretion but to proceed as directed by that section; and he is not required to investigate and determine whether or not the Secretary of Agriculture has performed his duty under the law.

Just what may be the purpose of the requirements of section 4 that the Secretary of Agriculture shall give the notice and opportunity to be heard may not be entirely clear. It will be observed that this section only requires the notice to be given to the person from whom the sample is obtained, who may be only the bailee of the property of which it is a sample, and knows nothing of its ingredients, and affording him an opportunity to be heard. This may be for the purpose of ascertaining who is the real violator of the law, if the analysis shows such violation, with a view of affording him an opportunity to discontinue its violation and proceed lawfully in the conduct of his

business under the act and the requirements of the Department of Agriculture. However this may be, it does not seem to me that the giving of, or the failure to give, such notice and opportunity to be heard can relieve any violator of the law of the penalties which he may have incurred by reason of its violation, or that the government is barred from prosecuting him by indictment or commencing proper proceedings for the condemnation and forfeiture of the property illegally manufactured and shipped, or offered for sale. This is the view taken by several of the district courts, viz.: Judge Morris in United States v. Fifty Barrels of Whisky, 165 Fed. 966; Judge Dayton, in United States v. Sixty-Five Casks Liquid Extracts, 170 Fed. 449, 454; Judge McPherson, in United States v. Nine Barrels of Olives, 179 Fed. 983; and Judge Willard in United States v. One Hundred Barrels of Vinegar, 188 Fed. 471. With the utmost respect for the opinions of the Court of Appeals of the Second Circuit, I am unable to agree with its conclusion in the case cited.

[2] The notice that is required to be given of the seizure of the property and of the proceedings for its condemnation affords ample opportunity to its owner to appear and defend against such proceedings; and if upon the final hearing it is condemned and declared forfeited, he is not deprived of his property without due process of law.

The exceptions of the government to that part of the answer of the claimant above referred to are allowed, and an order will be entered accordingly.

NOTE.—See United States v. Morgan, 222 U. S. 274, 32 Sup. Ct. 81, 56 L. Ed. ——.